UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————————

JERRY L. CLARK,

               Plaintiff,                              Case No.  1:15-CV-519

v.

                                          HON. ROBERT HOLMES BELL

COMMISSIONER OF SOCIAL
SECURITY,

               Defendant,

———————————————————/

## O P I N I O N

     This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner).  Plaintiff Jerry Clark seeks review of the Commissioner's decision denying his claim for supplemental security income (SSI) under Title XVI of the Social Security Act.

## STANDARD OF REVIEW

     The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process.  *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998).  The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679,

681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance.  *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted).  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight.  *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984).  The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 46 years of age on the date of the Administrative Law Judge's (ALJ) decision.  (PageID.43, 255.)  He left school after completing the seventh grade and failing to complete the eighth grade.  (PageID.110–11.)  Plaintiff's employment history consists of work as a plating equipment tender, however the ALJ determined such did not amount to past relevant work.  (PageID.54, 94–95.)  Plaintiff previously filed separate applications for disability insurance benefits and supplemental security income on April 16 and 17 of 2009. In each application, Plaintiff proceeded pro se at an administrative hearing before an ALJ. Both applications resulted in an unfavorable decision that subsequently became the Commissioner's final decision.  (PageID.163–80.)  In the instant case, Plaintiff again applied for SSI on September 11, 2012, alleging that he had been disabled since December 29, 2001, due to emotional and mental difficulties, as well as injuries related to several car accidents.[1] (PageID.183, 255–63.)  Plaintiff's application was denied on December 18, 2012, after which time he requested a hearing before an ALJ.  (PageID.203–06, 212–13.)  On September 12, 2013, Plaintiff appeared with a non-attorney representative  before ALJ Edward Studzinski for an administrative hearing with testimony being offered by Plaintiff, his girlfriend, and a vocational expert (VE).  (PageID.100–51.)  In a written decision dated December 27, 2013, the ALJ determined that Plaintiff was not disabled.  (PageID.43–60.)  On March 24, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's

---

[1]Recognizing that in SSI applications, claimants may not receive benefits prior to the month of application, Plaintiff later amended his onset date to September 11, 2012.  (PageID.274.)

3

final decision in the matter.  (PageID.33–35.)  Plaintiff subsequently obtained counsel and

initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating

disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2]  If the Commissioner can make a

dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R.

§§ 404.1520(a), 416.920(a).  The regulations also provide that if a claimant suffers from a

nonexertional impairment as well as an exertional impairment, both are considered in

determining the claimant's residual functional capacity (RFC).  *See* 20 C.F.R. §§ 404.1545,

416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by

---

[2]1.   An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2.   An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3.   If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4.   If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5.   If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Studzinski determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 11, 2012, the application date. (PageID.48.) At step two, the ALJ determined Plaintiff had the following severe impairments: 1) seizure disorder; 2) mood disorder; 3) obsessive-compulsive disorder; and 4) borderline intellectual functioning. (PageID.48.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.48–50.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: never climb ladders, ropes or scaffolds; never drive; never engage in operation of machinery; never work around unprotected heights, exposed flames or unguarded large bodies of water; cannot have concentrated exposure to unguarded, hazardous machinery; is limited to simple, routine and repetitive tasks; no more than simple decision making; no more than occasional and minor changes in the work setting; is limited to work that involves no more than simple judgment, but would be best suited for production type work, doing a limited number of simple tasks over and over; would not have to move around amongst work

5

> stations or offices; no more than brief and superficial interaction with the public; no more than brief and superficial interaction with co-workers and supervisors; cannot perform tandem or team work; and never physically touch other individuals, but can touch objects.

(PageID.50.) Continuing with the fourth step, the ALJ determined that Plaintiff had no past relevant work. (PageID.54.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy which Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. The VE testified that there existed approximately 7,500 jobs within the region, and 675,000 jobs in the nation, in the positions of production assembler, small parts assembler, and electronics worker that an individual similar to Plaintiff could perform. (PageID.55, 141–44.) This represents a significant number of jobs. *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988). Accordingly, the ALJ concluded that Plaintiff was not disabled at any point from September 11, 2012, through December 27, 2013. (PageID.56.)

## DISCUSSION

Plaintiff's brief failed to comply with the Court's Notice of July 27, 2015, that "Plaintiff's initial brief must contain a Statement of Errors, setting forth the specific errors of fact or law upon which Plaintiff seeks reversal or remand."[3] (PageID.950.) Because Plaintiff's counsel failed to enumerate the claims as directed, the Court must frame the

---

[3]Plaintiff's counsel is advised that future briefs failing to provide a Statement of Errors as directed by the Court may be stricken.

6

specific errors of fact or law upon which Plaintiff seeks reversal or remand. The Court gleans the following issues from Plaintiff's brief.  For the most part, the Court has adopted the arguments from the headings in Plaintiff's brief.

1.   The ALJ failed to properly analyze whether Listing 12.05 was satisfied;

2.   The ALJ erred by not properly assessing the functional limitations of Mr. Clark's OCD;

3.   The ALJ failed to properly assess Plaintiff OCD under the narrative discussion requirement of SSR 96-8p;

4.   The ALJ failed to properly weigh the opinion evidence;

5.   The ALJ failed to properly accommodate Mr. Clark's moderate difficulties in concentration, persistence, or pace;

6.   The ALJ failed to properly apply *Drummond v. Commissioner of Social Security* and Acquiescence Ruling 98-4(6); and

7.   The ALJ erred in his equivalency and RFC finding.

The Court will consider the issues below.

## 1.   Plaintiff Failed to Meet His Burden of Showing He Satisfies Listing 12.05(C).

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled.  Plaintiff argues that he is entitled to relief because the ALJ improperly determined that he does not satisfy Section 12.05(C) (Intellectual Disability)

of the Listing.[4]  Listing 12.05 provides, in pertinent part, as follows:

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> ***
>
> C.    A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;

20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.05.

Accordingly, "a claimant must make three showings to satisfy Listing 12.05(C): (1) he experiences significantly subaverage general intellectual functioning with deficits in adaptive functioning that initially manifested during the developmental period (i.e., the diagnostic description); (2) he has a valid verbal, performance, or full scale IQ of 60 through 70; and (3) he suffers from a physical or other mental impairment imposing an additional and significant work-related limitation of function." *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 697–98 (6th Cir. 2007) (internal quotation marks and brackets omitted).

Plaintiff asserts that he satisfies section 12.05(C).  Cognitive testing performed in

---

[4]The title of the listing has recently been changed from "Mental Retardation" to "Intellectual Disability."  The change has no substantive effect.

2013 revealed that Plaintiff possessed a full-scale IQ of 61.[5] (PageID.924). But Plaintiff must also meet the requirement of showing that his intellectual deficits initially manifested prior to age twenty-two, which, as explained above, is a threshold requirement of Listing 12.05 that must be satisfied before consideration of any criteria in Paragraphs A through D. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. *Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x. 450, 452 (6th Cir. 2007); *see also, Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (to satisfy Section 12.05, the claimant must demonstrate that he experienced deficiencies in adaptive functioning prior to attaining the age of 22).

The sole reason Plaintiff argues he meets this requirement is that the "record contained evidence that Mr. Clark failed grades of school, only completed the seventh grade in school, and was suspended from school." (PageID.964–65.) The Sixth Circuit, however, "has never held that poor academic performance, in and of itself, is sufficient to warrant a finding of onset of subaverage intellectual functioning before age twenty-two." *Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 677 (6th Cir. 2009); *see also Eddy v. Comm'r of Soc. Sec.*, 506 F. App'x 508, 510 (6th Cir. 2012); *Foster*, 279 F.3d at 355; *Whitehead v.*

---

[5]It appears the ALJ questioned the validity of the IQ test by noting Plaintiff's history of heavy alcohol use. The ALJ also noted the testing came well after Plaintiff turned 22. (PageID.50.) Plaintiff is correct that testing after age 22 may be competent evidence to a claimant's IQ before age 22. *See, e.g., Pearson v. Comm'r of Soc. Sec.*, 2008 WL 2325617, *2–3 and *6 (W.D. Mich. May 19, 2008). But what Plaintiff misunderstands is that the ALJ determined the reason he did not meet Listing 12.05 is because Plaintiff failed to meet the initial diagnostic requirement of showing that his intellectual and adaptive functioning deficits manifested before age 22, not because he had an invalid IQ. In fact, as the ALJ mentioned, he ended his analysis after concluding Plaintiff did not satisfy the introductory paragraph. (PageID.50.) Thus any alleged error on the part of the ALJ here is harmless.

*Colvin*, No. 14-209-GFVT, 2016 WL 1222253, at *3 (E.D. Ky. Mar. 28, 2016). In *Foster*, for example, the Sixth Circuit found that it was "unclear" why the plaintiff did not continue with her studies. *Foster*, 279 F.3d at 355. Similarly, here it is not clear why Plaintiff ended his education. At the hearing, Plaintiff asserted it was due to his inability to concentrate. (PageID.110–11.) However, as the Commissioner points out, at numerous places in the record Plaintiff claims he dropped out of school due to other reasons, namely a troubled home life. (PageID.350, 925.) By failing to point to evidence beyond his poor academic history–the cause of which is nebulous at best–Plaintiff has failed to present evidence that he experienced, prior to age 22, deficits in adaptive functioning, such as an inability to care for himself or handle social situations. *See Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641–42 (6th Cir. 2013).

While there exists evidence that Plaintiff experiences a certain level of cognitive impairment, Plaintiff's various activities are inconsistent with a conclusion that Plaintiff satisfies this Listing. *See, e.g., Burrell v. Comm'r of Soc. Sec.*, No. 99-4070, 2000 WL 1827799, at *2 (6th Cir., Dec. 8, 2000) (no evidence of a deficit in adaptive functioning where claimant "remained fairly active, maintains an interest in his household, and enjoys apparent satisfactory relationships with family members").

Significantly, Plaintiff's appeal brief does not attach or identify any medical, school, or other records which purport to prove deficiencies in adaptive functioning prior to age 22. This substantially undermines his argument that he is intellectually disabled under Listing

12.05.  *See Fisher v. Comm'r of Soc. Sec.*, No. 09–1096, 2011 WL 926865, *5 (W.D. Mich. Feb. 28, 2011).   In addition, Plaintiff did not identify any medical opinion that he is intellectually disabled, or that his current condition is consistent with such earlier, lifelong adaptive deficiencies. *See, e.g., Cooper,*  217 F. App'x at 452 (finding substantial evidence supporting an ALJ's conclusion that the plaintiff did not meet Listing 12.05 where, among other things, no medical professional opined plaintiff was intellectually disabled.)  The ALJ considered an opinion from Dr. Paul Kitchen, Ph.D., that stated Plaintiff was mentally deficient, but noted that the doctor did not opine Plaintiff was intellectually disabled. (PageID.50, 924.)  At the administrative hearing, Plaintiff's representative agreed that the opinion did not state Plaintiff was intellectually disabled.  (PageID.104–05.)

The burden rests with Plaintiff to demonstrate that he satisfies the requirements of a listed impairment. *See Kirby v. Comm'r of Soc. Sec.*, No. 01-5966, 2002 WL 1315617, at *1 (6th Cir. June 14, 2002). The ALJ evaluated the evidence of record and determined that Plaintiff failed to meet his burden in this regard. The ALJ's decision is supported by substantial evidence.  Plaintiff's claim is thus rejected.

### 2.	The RFC Properly Accounted for Plaintiff's OCD.

At the hearing, Plaintiff testified that he was impaired to an extent greater than that recognized by the ALJ.  Plaintiff claimed that his obsessive compulsive disorder (OCD) caused him to have an intense aversion to germs.  Consequently, he would clean with Lysol and bleach three to four times a day. (PageID.51.)  He also frequently vacuums, does not like

to be touched, cuts his own hair, and uses only one bathroom.  (PageID.51.)  The ALJ found that Plaintiff's allegations were "not entirely credible." (PageID.51.) Plaintiff claims the ALJ failed to properly account for all of his subjective allegations–specifically his need to excessively wash his hands, repeatedly clean areas, and spray down items touched by others. (PageID.966.)

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002) (same).   As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted).

Accordingly, "subjective complaints may support a finding of disability only where

12

objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.*; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony" (internal quotation marks omitted)).  It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987).  In fact, "an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

As noted above, the ALJ found that Plaintiff's testimony regarding the severity of his OCD was partially credible, and accounted for such in the RFC.  The ALJ noted that:

> These findings are supported by the claimant's testimony
> showing he can visit Walgreens, play with several dogs and visit
> at his girlfriend's son's house.  Additionally, it is supported by
> his treatment notes showing minimal deficit.  Yet, I have

13

> accommodated some of the claimant's allegations, by limiting the claimant from others.
>
> I acknowledge that I have not accommodated all of the claimant's alleged symptoms and limitations to the extent that they would be inconsistent with the findings in this decision. This is because, after considering the factors in SSR 96-8p, I find the claimant's allegations are not fully credible.

(PageID.53.)

The ALJ's credibility determination is reasonable and supported by substantial evidence. *Rogers*, 486 F.3d at 249. The ALJ noted the inconsistency between Plaintiff's statement that he "can't touch germs," (PageID.108,) and his later statement that he plays with his girlfriend's son's dogs without concern for germs. (PageID.121.) Plaintiff's condition improved with medication. (PageID.848.) The ALJ recognized that Plaintiff has a number of limitations due to his OCD and accounted for these in the RFC. There is no compelling reason to disturb this credibility determination. *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

### 3.   The ALJ's RFC Discussion Complied With Social Security Rulings.

The ALJ stated he adopted the following restrictions due to Plaintiff's RFC:

> [T]o accommodate the claimant's obsessive compulsive disorder/mood disorder, I find that the claimant should be limited to work where he would not have to move around amongst work stations or offices; have no more than brief and superficial interaction with the public; no more than brief and superficial interaction with co-workers and supervisors; no tandem or team work; and never physically touch other individuals, but can touch objects.

14

(PageID.53.)  Plaintiff claims the  ALJ failed to "set forth a supported record rationale for this finding" in violation of SSR 96-8p. (PageID.968.) Specifically, Plaintiff argues the ALJ failed to adequately discuss why he was not adopting all of his subjective allegations, and also failed to explain why he was not further limited with respect to his interaction with supervisors.  (PageID.967–68.)  The Court disagrees.

According to SSR 96–8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  SSR 96–8p, 1996 WL 374184, at *7 (July 2, 1996).  The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," discuss "why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence," "consider and address medical source opinions," and "[i]f the RFC assessment conflicts with an opinion from a medical source . . . explain why the opinion was not adopted." *Id.*

The portion of the ALJ's opinion dealing with the RFC assessment spans five pages and includes a summary of Plaintiff's testimony regarding his disabling limitations, the ALJ's credibility analysis, and a brief summary of the opinion evidence.  The ALJ summarized Plaintiff's testimony regarding his OCD as follows: "He will not let anyone touch his hair, so he cuts it himself.  He stated he will only use his mother's bathroom.  He stated that he only has seen a medical doctor twice and will not see a dentist. . . . He stated that he last

worked in 2001, and stopped because too many people were around him." (PageID.51.)

During the credibility discussion, the ALJ discussed several years of medical records relating

to Plaintiff's mental health.  Citing to the record, the ALJ explained why he found Plaintiff

was not as impaired as alleged.  For example, the ALJ noted a July 11, 2012, treatment note

where Plaintiff stated he felt much better on medication and had made good progress in

therapy. (PageID.346.)   On October 23, 2012, Plaintiff was given a GAF of 65.

(PageID.703.)  This reflected the doctor's subjective opinion that Plaintiff suffered from

"some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in

social, occupational, or school functioning (e.g., occasional truancy, or theft within the

household), but generally functioning pretty well, has some meaningful interpersonal

relationships." AMERICAN PSYCHIATRIC ASSOC., DIAGNOSTIC AND STATISTICAL MANUAL OF

MENTAL DISORDERS (DSM–IV–TR) 34 (4th ed., text rev., 2000).  Plaintiff appeared to be

"cordial and cooperative" and in "no apparent acute distress." (PageID.704.) The ALJ noted

that Plaintiff subsequently received GAF scores ranging only from 45 to 55, but noted that

there was no explanation provided for the difference.  (PageID.52.)  On April 1, 2013,

Plaintiff described a mildly positive difference after an adjustment in medication.  He again

appeared cordial and cooperative with no apparent acute distress and was in an "all right"

mood.  (PageID.812.)  On August 2, 2013, Plaintiff had an unremarkable mood and affect

as well as behavior and functioning.   (PageID.841.)   He again stated he experienced

improvement because of his medications.  (PageID.841.)  The ALJ noted that Plaintiff's

16

girlfriend testified that he was more impaired than that found in the treatment notes, because Plaintiff told the doctors what they wanted to hear so that he could leave due to his fear of germs. (PageID.52.)  The ALJ noted, however, that there was nothing aside from the girlfriend's testimony to support this assertion, and that her testimony was inconsistent with the Plaintiff's testimony that he played with dogs and visited Walgreens without an apparent fear of germs. (PageID.53.)  After describing the above medical records, as well as others relating to his mental impairments, the ALJ discussed the opinions of state agency medical consultants and Plaintiff's social worker, and noted that there was no opinion supporting disability. (PageID.54.)

The Court finds this narrative to be sufficient and moreover finds that substantial evidence supports the ALJ's RFC.  The Court recognizes that the ALJ could have more clearly articulated how the evidence relating to Plaintiff's OCD translated into the specific RFC he chose, but nonetheless finds that the ALJ satisfied the discussion requirements by addressing the medical evidence and Plaintiff's credibility. *See Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009) (finding the discussion element satisfied by analyzing medical evidence and assessing credibility); *Blevins v. Astrue*, No. 4:08–CV–87–PRC, 2009 WL 2778304, at *14 (N.D. Ind. Aug.31, 2009) (same).

Plaintiff argues the opinion evidence demonstrates that he is further limited.  This Court, however, cannot re-weigh the evidence and must affirm the ALJ's decision if there is substantial evidence in the record which, as noted above, there is*. See Gaffney v. Brown*,

825 F.2d 98, 100 (6th Cir. 1987).  Moreover, the Court is not convinced by Plaintiff's argument that the state agency medical consultant and Ms. Nadine Fish opined Plaintiff was further limited with regard to supervisors than that found in the RFC.  On December 17, 2012, Dr. Ruqiya Tareen concluded Plaintiff was "[m]oderately limited" with regard to his ability to "accept instructions and respond appropriately to criticism by supervisors." (PageID.195.)  On September 5, 2012, Ms. Fish stated that Plaintiff was markedly limited in this area.  (PageID.532.)  Plaintiff fails to show,  however, that these opinions are inconsistent with the RFC.  Nor does Plaintiff provide any authority showing that such limitations should lead to a more restrictive RFC.  Moreover, as a social worker, Ms. Fish's opinion was not entitled to any particular weight.  *Noto v. Comm'r of Soc. Sec.*, 632 F. App'x 243, 248–49.  The Court does not doubt that Plaintiff is limited due to his OCD impairment.  Such limitations, however, are adequately accounted for in the RFC.  Accordingly, Plaintiff's claim is rejected.

### 4.    The ALJ Did Not Err Regarding the Opinion Evidence.

Plaintiff next argues that the ALJ erred in his discussion of the opinion from Plaintiff's social worker, Ms. Nadine Fish.  Both parties agree that as a social worker, Ms. Fish does not qualify as an acceptable source.  Nonetheless, Plaintiff argues the ALJ failed to follow applicable regulations for considering the opinion.

Plaintiff's argument is without merit.  The regulations provide that the agency will evaluate every medical opinion received "[r]egardless of its source," and that unless a

treating source's opinion is given controlling weight, the agency will consider the factors set forth in § 404.1527(c)(1)-(6) in deciding the weight given to any medical opinion. See 20 C.F.R. § 404.1527(c). While the ALJ is required to give "good reasons" for the weight assigned to a treating source's opinion, *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004), this articulation requirement does not apply when an ALJ evaluates the report of a medical source who is not a treating, acceptable medical source. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007). The opinion of a "non-acceptable medical source," such as a nurse practitioner, therapist, or social worker "is not entitled to any particular weight or deference—the ALJ has discretion to assign it any weight he feels appropriate based on the evidence of record." *Noto*, 632 F. App'x at 248–49. However, "the ALJ's decision still must say enough to allow the appellate court to trace the path of his reasoning." *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (internal quotation marks omitted).  Here, the ALJ provided a reasoned evaluation of the opinions prepared by Ms. Fish, and correctly noted that the extreme limitations were inconsistent with her own treatment notes that indicated Plaintiff was doing well on his medications, and were also inconsistent with Plaintiff's activities of daily living.  (PageID.54.)  These reasons are supported by substantial evidence.  (PageID.121, 848.)  To the extent Plaintiff provides conflicting evidence, it is not for this Court to re-weigh the evidence.  Accordingly, Plaintiff's claim of error is denied.

## 5.   The RFC Accounted for Plaintiff's Moderate Limitations in Pace.

Plaintiff next argues that while the ALJ's RFC determination may have accounted for Plaintiff's moderate difficulties in concentration, the ALJ failed to properly consider his moderate difficulties in persistence and pace.

Plaintiff conflates the analysis conducted at separate points of the ALJ's decision. At step 3 in the sequential analysis, the ALJ considered whether Plaintiff satisfied the "paragraph B" criteria of listings 12.04, 12.05, and 12.06. (PageID.49.) As the ALJ stated:

> To satisfy the "paragraph B" criteria . . . the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

(PageID.49.)  Here, Plaintiff is attempting to take a portion of the ALJ's step 3 finding out of context and substitute it for the ALJ's factual finding at step 4.  It is well established, however, that the paragraph B criteria used in determining whether a claimant meets or equals a listed impairment "are not an RFC assessment," but rather are "used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." *See* SSR 96–8p, 1996 WL 374184, at *4 (July 2, 1996).  RFC is a more detailed assessment made by "itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings in 12.00 or the Listing of Impairments." *Id.* at *4; *see also Collier v. Comm'r of Soc. Sec.*, No. 1:11–cv–1144, 2013 WL 4539631, at *5–6 (W.D. Mich. Aug. 27, 2013).  The ALJ's findings at earlier steps in the sequential analysis do not

undermine his RFC determination. *See Pinkard v. Comm'r of Soc. Sec.*, No. 1:13–cv–1339, 2014 WL 3389206, at *10 (N.D. Ohio July 9, 2014) (making a similar analysis). Accordingly, the ALJ was not required to account for his findings at step 3 in his step 4 analysis.

Plaintiff relies on *Ealy v. Commissioner of Social Security*, 594 F.3d 504 (6th Cir. 2010) to support his claim that the ALJ's RFC was deficient.  In *Ealy*, the Sixth Circuit rejected an ALJ's "streamlined" hypothetical question to a VE which limited the claimant "to simple, repetitive tasks and instructions in non-public settings," where the ALJ found that the claimant's RFC limited the claimant's "ability to sustain attention to complete simple repetitive tasks to [two-hour] segments over an eight-hour day where speed was not critical." *Id.* at 516.  Given the rather specific RFC assessment, the *Ealy* court rejected that ALJ's hypothetical question because it omitted "speed—and pace—based restrictions."  *Id.* However, the present case is distinguishable from *Ealy*.  Unlike *Ealy*, the ALJ did not find that Plaintiff was subject to a specific speed and pace restriction (such as working two hour segments over an eight-hour day where speed was not critical).  Rather, the ALJ found that Plaintiff had only moderate limitations with regard to concentration, persistence or pace. (PageID.49.)  Such limitations could be accommodated by performing "simple, routine and repetitive tasks" which involved "simple judgment." (PageID.50.) *See, e.g., Smith*, 307 F.3d at 378–79.  Accordingly, Plaintiff's claim of error will be denied.[6]

_____

[6]Plaintiff further argues that the ALJ erred by giving "great weight" to Dr. Tareen's opinion,
(continued...)

6.      **The ALJ Erred in Failing to Adopt the Prior RFC Absent New and Material Evidence.**

As noted above, Plaintiff previously filed an application for SSI on April 17, 2009.

That application resulted in an unfavorable decision by ALJ Henry Kramzyk on May 15,

2012. (PageID.163–77.) In the prior decision, ALJ Kramzyk determined that Plaintiff had

the RFC:

> to perform medium work as defined in 20 CFR 416.967(c) as
> the claimant is able to lift and/or carry 50 pounds occasionally
> and 25 pounds frequently and sit, stand, and/or walk for six
> hours in an eight hour workday, except: the claimant is unable
> to climb ladders, ropes or scaffolds, kneel and crawl, may
> occasionally climb ramps and stairs, balance, stoop and crouch,
> and must avoid all exposure to hazards such as machinery and
> heights, or the driving of motor vehicles.  In addition, the
> claimant requires an occupation with only occasional coworker
> contact and supervision, and only superficial contact with the
> public on routine matters.

(PageID.172.) As Plaintiff points out, ALJ Studzinksi's RFC determination in the instant

matter is less restrictive than the prior RFC in several respects.  For example, ALJ

Studzinski's RFC finds Plaintiff is capable of working at all exertional levels, does not

include limitations on Plaintiff's ability to sit, stand, and walk during the workday, and is less

---

[6](...continued)
but failing to incorporate all the limitations into the RFC.  (PageID.971–72.)  Plaintiff failed to present this claim in a Statement of Errors, however, and even reading Plaintiff's brief indulgently, failed to adequately raise the issue.  Plaintiff has thus waived the issue. *See Ealy*, 594 F.3d at 513; *Oudsema v. Comm'r of Soc. Sec.*, No. 1:11–cv–1264, 2013 WL 588925, at * 5 (W.D.Mich. Feb. 13, 2013). Even if Plaintiff had not waived the issue, however, it would have failed.  Dr. Tareen opined that Plaintiff was capable of performing simple routine tasks on a sustained level.  (PageID.195.) Plaintiff cannot demonstrate how this is inconsistent with the RFC.

restrictive regarding exposure to hazards.  Plaintiff claims ALJ Studzinski was required to adopt ALJ's Kamzyk's RFC.

The issue of whether or when a subsequent ALJ must follow an RFC determination articulated by a prior ALJ has been addressed by the Sixth Circuit in *Dennard v. Sec'y of Health & Human Servs*, 907 F.2d 598 (6th Cir. 1990) and *Drummond v. Comm'r of Soc. Sec.,* 126 F.3d 837 (6th Cir. 1997), as well as by the Social Security Administration in Acquiescence Rulings 98-3(6) and 98- 4(6).

### A.  *Dennard v. Secretary of Health and Human Services*

In *Dennard*, the claimant filed an application for benefits which was eventually denied on the ground that, while he could no longer perform his past relevant work, he retained the ability to perform sedentary work which existed in significant numbers. 907 F.2d at 598–99. The claimant later submitted another application for benefits.  This latter application was denied by an ALJ on the ground that the claimant *could* perform his past relevant work.  *Id.* at 599.  An appeal of this decision to federal district court was unsuccessful.  The Sixth Circuit reversed the district court and ordered that the matter be remanded for further consideration. *Id.* at 600.  Specifically, the court held that the latter ALJ was estopped, on res judicata grounds, from contradicting the prior determination that the claimant was unable to perform his past relevant work. *Id.*

### B.  *Drummond v. Commissioner of Social Security*

In *Drummond*, the claimant filed an application for benefits which was denied based

on a finding that, while she could no longer perform her past relevant work, she could perform sedentary work which existed in significant numbers. 126 F.3d at 838. The claimant later filed another application for benefits which was denied based on the finding that she retained the ability to perform medium work. *Id.* at 838–39. After unsuccessfully appealing the matter in federal district court, the claimant pursued the matter in the Sixth Circuit. *Id.* at 839–40. Based, in part, on the *Dennard* decision, the *Drummond* court held that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." *Id.* at 840–42. Thus, if an earlier ALJ makes a finding regarding a claimant's RFC, a later ALJ is bound by that RFC determination absent evidence to the contrary. *See, e.g., Gay v. Comm'r of Soc. Sec.*, 520 F. App'x 354, 356 (6th Cir. 2013).

### C.    *Acquiescence Rulings 98-3(6) and 98-4(6)*

Finding that *Dennard* and *Drummond* conflicted with Social Security policy, the Social Security Administration issued Acquiescence Rulings 98-3(6) and 98-4(6). *See* Acquiescence Ruling 98-3(6), 1998 WL 274051 (Soc. Sec. Admin., June 1, 1998); Acquiescence Ruling 98-4(6), 1998 WL 274052 (Soc. Sec. Admin., June 1, 1998). With respect to how *Dennard* and *Drummond* differed from Social Security policy, the Social Security Administration observed:

> Under SSA policy, if a determination or decision on a disability claim has become final, the Agency may apply administrative res judicata with respect to a subsequent disability claim under the same title of the Act if the same parties, facts and issues are

24

> involved in both the prior and subsequent claims. However, if
> the subsequent claim involves deciding whether the claimant is
> disabled during a period that was not adjudicated in the final
> determination or decision on the prior claim, SSA considers the
> issue of disability with respect to the unadjudicated period to be
> a new issue that prevents the application of administrative res
> judicata. Thus, when adjudicating a subsequent disability claim
> involving an unadjudicated period, SSA considers the facts and
> issues de novo in determining disability with respect to the
> unadjudicated period.

Acquiescence Ruling 98-3(6), 1998 WL 274051 at 29771; Acquiescence Ruling 98-4(6), 1998 WL 274052 at 29773.

As the Social Security Administration recognized, the *Dennard* and *Drummond* decisions conflicted with Social Security policy. Specifically, the Sixth Circuit concluded that where a final decision by the Social Security Administration contains findings regarding the claimant's ability to perform his past relevant work (*Dennard*) or the claimant's residual functional capacity (*Drummond*), the Administration "may not make a different finding in adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim unless new and additional evidence or changed circumstances provide a basis for a different finding." Acquiescence Ruling 98-3(6), 1998 WL 274051 at 29771; Acquiescence Ruling 98-4(6), 1998 WL 274052 at 29773.

Accordingly, the Social Security Administration concluded that it would apply *Dennard* and *Drummond*, within the Sixth Circuit, under the following standard:

> When adjudicating a subsequent disability claim with an
> unadjudicated period arising under the same title of the Act as
> the prior claim, adjudicators must adopt such a finding from the

> final decision by an ALJ or the Appeals Council on the prior
> claim in determining whether the claimant is disabled with
> respect to the unadjudicated period unless there is new and
> material evidence relating to such a finding or there has been a
> change in the law, regulations or rulings affecting the finding or
> the method for arriving at the finding.

Acquiescence Ruling 98-3(6), 1998 WL 274051 at 29771; Acquiescence Ruling 98-4(6),

1998 WL 274052 at 29773.

In other words, the Social Security Administration adopted, with respect to

applications brought within the geographic territory of the Sixth Circuit, the holdings in

*Dennard* and *Drummond*.  In sum, an Administrative Law Judge is bound by a previous

Administrative Law Judge's RFC absent changed circumstances.

D.     *ALJ Studzinksi's Assessment.*

As an initial matter, neither party disputes that *Dennard* and *Drummond* apply in this

case.  The application in the instant case was for SSI benefits, as was the prior application

discussed by ALJ Kramzyk.  But ALJ Studzinski make*s* no mention of the *Dennard* or

*Drummond* decisions nor the Acquiescence Rulings.  Indeed, it is not clear from the ALJ's

decision, nor the transcript from the administrative hearing, whether ALJ Studzinski was

aware of ALJ Kramzyk's decision or even knew Plaintiff had previously filed an application

for SSI benefits.  Accordingly, the ALJ made no mention of whether there was new and

material evidence or changed circumstances since the prior decision such that a new RFC

might be justified.  The Court concludes, therefore, that the ALJ's decision fails to follow

the direction of the *Dennard* and *Drummond* decisions.  The Commissioner appears to argue

26

that it is not clear that ALJ Studzinksi's opinion is in fact less restrictive than the prior RFC, noting that in stating Plaintiff must avoid "all exposure to hazards such as machinery," the prior ALJ must have meant only hazardous machinery, because a contrary finding would lead to an absurd result. (PageID.997.)  Maybe so.  The Court certainly has its doubts that the latter RFC is as restrictive as the prior one, especially in light of the fact that ALJ Studzinski's RFC allowed for all exertional levels and did not provide any limit regarding the ability of the Plaintiff to sit, stand, and walk.  But it is not the role of this Court to speculate.  An ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). Based on this record, the Court cannot trace the path of the ALJ's reasoning, such as it is, regarding changed circumstnaces.  The Commissioner's decision will therefore be reversed and remanded for further consideration.  On remand, the Commissioner should apply the acquiescence rulings absent new and material evidence or a change in the law.

### 7.    The ALJ Did Not Err At Step 3.

Plaintiff argues that the ALJ erred by failing to consult a medical expert before determining Plaintiff did not have a physical impairment that equaled a listing. (PageID.973–74.)  As noted above, the ALJ found that Plaintiff did not meet or medically equal the requirements of any listing.  The ALJ specifically mentioned Listing 11.02 and 11.03, but noted "[t]he evidence not only fails to document the required frequency of seizures, but also shows that the claimant does not regularly take his anti-seizure

27

medication." (PageID.48.)  Plaintiff has not challenged the ALJ's finding that he did not meet the requirements of listing 11.02 or 11.03, nor could he successfully do so on the present record.  All of the ALJ's findings with regard to listing 11.02 and 11.03 are supported by more than substantial evidence.

Plaintiff did not make any argument in his pre-hearing brief that he met or equaled the requirements of any listed physical impairment.  (PageID.324–26.)  He did not present any argument claiming that the ALJ needed to consult a medical expert before making a determination that Plaintiff's seizures did not meet or equal the requirements of a listing. The hearing transcript is likewise devoid of any argument that Plaintiff suffered from any physical impairment approaching listing-level severity.  (PageID.100–50.)  Nor was the argument made to the Appeals Council.  (PageID.327–31.)  The Court recognizes that Plaintiff was represented by a non-attorney representative at this stage, but the record shows Plaintiff's representative was well versed in the applicable listings–as evidenced by the representative's argumentation in the brief and hearing regarding Plaintiff's mental impairments.

The ALJ found that "the medical evidence does not document listing-level severity and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination."  (PageID.48.)  Plaintiff has not shown that the ALJ's finding in this regard is not supported by substantial evidence.  Instead, Plaintiff argues for the first time in this appeal that the ALJ erred by failing to consult a

medical expert before determining that his physical impairments did not equal a listing.

Plaintiff had the burden at step 3 of the sequential analysis to establish that he met or equaled the requirements of a listing.  Plaintiff was required to prove "'medical findings equal in severity to all the criteria for the listed impairment.'"  *Foster*, 279 F.3d at 355 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)).  It was not the ALJ's burden.  *See Lusk v. Comm'r of Soc. Sec.*, 106 F. App'x 405, 411 (6th Cir. 2004) (Plaintiff "must present specific medical findings that his impairment meets the applicable impairment or present medical evidence that describes how his impairment is equivalent to a listed impairment."); *Shinaver v. Comm'r of Soc. Sec.*, No. 1:14–cv–727, 2015 WL 4644482, at *2 (W.D. Mich. Aug. 4, 2015) (Plaintiff "bore the burden of providing medical evidence to support his equivalency argument.").

Even assuming that Plaintiff had presented medical evidence describing how his physical impairments were equivalent to a listing, such an opinion would have been entitled to consideration, but not any particular weight. *See* 20 C.F.R. §§ 404.1527(d)(2), (3). Whether an impairment equals a listed impairment is an administrative issue reserved to the Commissioner, not a medical determination. *See Zaph v. Comm'r of Soc. Sec.*, No. 97–3496, 1998 WL 252764, at * 2 (6th Cir. May 11, 1998) ("[T]he issue of whether an individual's impairment is equivalent to a listed impairment is an administrative finding, not a medical one."); *see also Hyde v. Comm'r of Soc. Sec.*, No. 1:08–cv–1013, 2010 WL 1131956, at * 6 (W.D. Mich. Mar.1, 2010).

The ALJ was not required to consult with a medical expert before making his finding that Plaintiff did not meet or equal the requirements of a listed impairment. *See Weldon v. Comm'r of Soc. Sec.*, No. 1:13–cv–402, 2014 WL 4956229, at *5 (W.D. Mich. Oct.2, 2014). Federal regulations allow an ALJ to call a medical expert to explain medical records, but do not require him to do so.  20 C.F.R. §§ 404.1527(e)(2)(iii); *see also Weldon*, 2014 WL 4956229, at *5; *O'Neill v. Colvin*, No. 1:13–cv–867, 2014 WL 3510982, at *17–18 (N.D. Ohio July 9, 2014); *Wredt ex rel. E.E. v. Colvin*, No. 4:12–cv–77, 2014 WL 281307, at *7 (E.D. Tenn. Jan.23, 2014).  Accordingly, Plaintiff's claim is rejected.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is not supported by substantial evidence.  Accordingly, the Commissioner's decision is **REVERSED** and this matter is **REMANDED** for further factual proceedings under sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner is directed to apply the relevant acquiescence rulings to the prior May 15, 2012, decision.


Dated: May 11, 2016                     /s/ Robert Holmes Bell
                                        ROBERT HOLMES BELL
                                        UNITED STATES DISTRICT JUDGE